UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ESTER MARTINEZ, LERIA PEREZ ZAPATA, and
MATEO GUZMAN,   **Case No.:** 1:23-cv-4667 (CBA) (PK)

                      Plaintiffs,

    -against-

ATLANTIS SUPER WASH CENTER INC., CLEAN
CITY LAUNDRY INC., MICHAEL DINARDI, and
NICK MIRA,

                      Defendants.
-----------------------------------------------------------------X

## DECLARATION OF EMANUEL KATAEV, ESQ.
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**EMANUEL KATAEV, ESQ.**, declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1. I am admitted to practice before this Court and I am a partner of Milman Labuda Law Group PLLC, attorneys for the Defendants in this case, except Michael Dinardi.

2. I respectfully submit this declaration in support of Defendants' motion to dismiss for failure to state a claim upon which relief can be granted (the "Motion"), and to supply this Court with exhibits relevant to is determination of the Motion consistent with this Court's Individual Practices & Rules.

3. Attached hereto as **Exhibit A** is a true and correct copy of Plaintiff's First Amended Complaint dated October 16, 2023.

      I declare under penalty of perjury that the foregoing is true and correct.  Executed on January 12, 2024.

                                                   */s/ Emanuel Kataev, Esq.*
                                            **EMANUEL KATAEV, ESQ.**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ESTER MARTINEZ, LERIA PEREZ ZAPATA, and MATEO GUZMAN,

                Plaintiffs,

   -against-

ATLANTIS SUPER WASH CENTER INC., CLEAN CITY LAUNDRY INC., MICHAEL DINARDI, and NICK MIRA,

                Defendants.
-----------------------------------------------------------X

23-cv-04667 (CBA)(PK)

**FIRST AMENDED COMPLAINT**

Plaintiffs, ESTER MARTINEZ ("Martinez"), LERIA PEREZ ZAPATA ("Zapata"), and MATEO GUZMAN ("Guzman") (collectively "Plaintiffs"), as and for their First Amended Complaint against Defendants, ATLANTIS SUPER WASH CENTER INC. ("Atlantis Super Wash"), CLEAN CITY LAUNDRY INC. ("Clean City"), MICHAEL DINARDI ("Dinardi"), and NICK MIRA ("Mira") (collectively "Defendants"), respectfully allege as follows:

## NATURE OF THE ACTION

1. Upon information and belief, Atlantis Super Wash and Clean City jointly own and operate a laundromat and dry cleaners in Brooklyn, New York.

2. Plaintiffs worked for Defendants as laborers.

3. Plaintiffs bring this lawsuit seeking to recover unpaid overtime, minimum wages, and other relief related to their employment with Defendants.

## JURISDICTION AND VENUE

4. Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), Articles 6 and 19, and their respective attendant regulations.

5. Jurisdiction over Plaintiff Martinez's FLSA claim is based upon Section 216(b) of the FLSA, 29 U.S.C. § 216(b), and upon 28 U.S.C. § 1331.

6. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a) because these claims are so related to the FLSA claim that they form part of the same case or controversy.

7. Venue in this district is appropriate under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

**Defendant Atlantis Super Wash Center Inc.**

8. Upon information and belief, Atlantis Super Wash is a domestic business corporation duly organized and existing under the laws of the State of New York.

9. Upon information and belief, Atlantis Super Wash maintains its principal place of business at 873 Bedford Avenue, Brooklyn, New York 11205.

10. Upon information and belief, Atlantis Super Wash owns and operates the "Atlantis Super Wash Center" located at 873 Bedford Avenue, Brooklyn, New York 11205.

11. At all times relevant to this Complaint, Atlantis Super Wash had and continues to have employees engaged in commerce or in the production of goods and services for commerce.

12. At all times relevant to this Complaint, Atlantis Super Wash had and continues to have employees who handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce.

13. At all times relevant to this Complaint, Atlantis Super Wash had, either individually or jointly, an annual gross volume of sales of not less than $500,000.00 for each applicable year of Plaintiffs' employment.

14. At all times relevant to this Complaint, Atlantis Super Wash was and is a covered employer within the meaning of the FLSA and, at all times relevant to this Complaint, employed Plaintiffs.

15. During Plaintiffs' employment, Atlantis Super Wash maintained control, oversight, and direction over them, including timekeeping, payroll, and other employment practices.

**Defendant Clean City Laundry Inc.**

16. Upon information and belief, Clean City is a domestic business corporation duly organized and existing under the laws of the State of New York.

17. Upon information and belief, Clean City maintains its principal place of business at 873 Bedford Avenue, Brooklyn, New York 11205.

18. Upon information and belief, Clean City owns and operates the Atlantis Super Wash located at 873 Bedford Avenue, Brooklyn, New York 11205.

19. At all times relevant to this Complaint, Clean City had and continues to have employees engaged in commerce or in the production of goods and services for commerce.

20. At all times relevant to this Complaint, Clean City had and continues to have employees who handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce.

21. At all times relevant to this Complaint, Clean City had, either individually or jointly, an annual gross volume of sales of not less than $500,000.00 for each applicable year of Plaintiffs' employment.

22. At all times relevant to this Complaint, Clean City was and is a covered employer within the meaning of the FLSA and, at all times relevant to this Complaint, employed Plaintiffs.

23. During Plaintiffs' employment, Clean City maintained control, oversight, and direction over them, including timekeeping, payroll, and other employment practices.

**Defendant Michael Dinardi**

24. Upon information and belief, Dinardi is a resident of the State of New York.

25. Upon information and belief, Dinardi is the Chief Executive Officer of Atlantis Super Wash.

26. At all relevant times, Dinardi was an individual engaged in business within the County of Kings, State of New York.

27. Upon information and belief, Dinardi was and continues to be an owner, officer, director, shareholder, and/or managing agent of Atlantis Super Wash.

28. Upon information and belief, Dinardi was and continues to be an owner, officer, director, shareholder, and/or managing agent of Clean City.

29. Upon information and belief, at all relevant times, Dinardi participated in running the daily operations of Atlantis Super Wash.

30. Upon information and belief, at all relevant times, Dinardi participated in running the daily operations of Clean City.

31. Upon information and belief, at all relevant times, Dinardi participated in the management and supervision of Plaintiffs and their work for Atlantis Super Wash and Clean City.

32. Upon information and belief, at all relevant times, Dinardi exercised operational control over Atlantis Super Wash, controlled significant business functions of Atlantis Super Wash, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of Atlantis Super Wash in devising, directing, implementing, and supervising the wage and hour practices and policies relating to its employees, including Plaintiffs.

33. Upon information and belief, at all relevant times, Dinardi exercised operational control over Clean City, controlled significant business functions of Clean City, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of Clean City in devising, directing, implementing, and supervising the wage and hour practices and policies relating to its employees, including Plaintiffs.

34. Upon information and belief, Dinardi determined the wages and compensation of Atlantis Super Wash and Clean City's employees, established the schedules of its employees, maintained its employee records, and had the authority to hire and fire its employees, including as such practices applied to Plaintiffs.

35. At all times relevant to this Complaint, Dinardi was an employer within the meaning of the FLSA and/or the NYLL and, at all relevant times, employed Plaintiffs.

36. Dinardi participated in the decision to hire Plaintiffs.

37. Dinardi participated in the decision to fire Plaintiffs.

38. Dinardi participated in deciding the job duties that Plaintiffs performed.

39. Dinardi participated in directing Plaintiffs' job duties and responsibilities.

40. Dinardi participated in the supervision of Plaintiffs' job duties and responsibilities.

41. Dinardi participated in deciding the manner in which Plaintiffs were paid.

42. Dinardi participated in deciding the compensation Plaintiffs were paid.

43. Dinardi was responsible for ensuring Plaintiffs were paid properly.

**Defendant Nick Mira**

44. Upon information and belief, Mira is a resident of the State of New York.

45. Upon information and belief, Mira is the Chief Executive Officer of Clean City.

46. At all relevant times, Mira was an individual engaged in business within the County of Kings, State of New York.

47. Upon information and belief, Mira was and continues to be an owner, officer, director, shareholder, and/or managing agent of Clean City.

48. Upon information and belief, Mira was and continues to be an owner, officer, director, shareholder, and/or managing agent of Atlantis Super Wash.

49. Upon information and belief, at all relevant times, Mira participated in running the daily operations of Clean City.

50. Upon information and belief, at all relevant times, Mira participated in running the daily operations of Atlantis Super Wash.

51. Upon information and belief, at all relevant times, Mira participated in the management and supervision of Plaintiffs and their work for Atlantis Super Wash and Clean City.

52. Upon information and belief, at all relevant times, Mira exercised operational control over Clean City, controlled significant business functions of Clean City, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of Clean City in devising, directing, implementing, and supervising the wage and hour practices and policies relating to its employees, including Plaintiffs.

53. Upon information and belief, at all relevant times, Mira exercised operational control over Atlantis Super Wash, controlled significant business functions of Atlantis Super Wash, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of Atlantis Super Wash in devising, directing, implementing, and supervising the wage and hour practices and policies relating to its employees, including Plaintiffs.

54. Upon information and belief, Mira determined the wages and compensation of Atlantis Super Wash and Clean City's employees, established the schedules of its employees, maintained its employee records, and had the authority to hire and fire its employees, including as such practices applied to Plaintiffs.

55. At all times relevant to this Complaint, Mira was an employer within the meaning of the FLSA and/or the NYLL and, at all relevant times, employed Plaintiffs.

56. Mira participated in the decision to hire Plaintiffs.

57. Mira participated in the decision to fire Plaintiffs.

58. Mira participated in deciding the job duties that Plaintiffs performed.

59. Mira participated in directing Plaintiffs' job duties and responsibilities.

60. Mira participated in the supervision of Plaintiffs' job duties and responsibilities.

61. Mira participated in deciding the manner in which Plaintiffs were paid.

62. Mira participated in deciding the compensation Plaintiffs were paid.

63. Mira was responsible for ensuring Plaintiffs were paid properly.

**Defendants Constitute Joint Employers and a Single Enterprise**

64. Upon information and belief, Atlantis Super Wash and Clean City are part of a single integrated enterprise that jointly employed Plaintiffs.

65. Upon information and belief, Atlantis Super Wash and Clean City's operations are interrelated and unified.

66. Upon information and belief, Atlantis Super Wash and Clean City share common management, are centrally controlled, and share common ownership.

67. Upon information and belief, Atlantis Super Wash and Clean City share employees, equipment, and supplies.

68. Upon information and belief, Atlantis Super Wash and Clean City maintain and share a principal place of business located at 873 Bedford Avenue, Brooklyn, New York 11205.

69. Upon information and belief, Atlantis Super Wash and Clean City share operational control over the laundromat and dry cleaners located at 873 Bedford Avenue, Brooklyn, New York 11205.

70. Upon information and belief, Atlantis Super Wash and Clean City are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

71. Each Defendant possessed substantial control over Plaintiffs' working conditions and over the policies and practices referred to herein with respect to the employment and compensation of Plaintiffs.

72. Defendants dictated, controlled, and ratified the wage and hour and all related employee compensation policies during Plaintiffs' employment.

73. Defendants managed Plaintiffs' employment, including the amount of time worked and the rates that they were paid.

74. Defendants jointly employed Plaintiffs and are Plaintiffs' employers within the meaning of the FLSA and the NYLL.

**Plaintiff Ester Martinez**

75. Martinez is an adult female currently residing in the State of New York.

76. Defendants employed Martinez as a laborer for their benefit and at their direction.

77. Defendants employed Martinez from on or about May 15, 2021 until on or about June 14, 2023.

78. At all relevant times, Martinez was an employee of Defendants, as defined by the FLSA and the NYLL.

79. From on or about May 15, 2021 until in or about August 2021, Martinez worked Monday through Friday from 7:00 a.m. to 5:00 p.m. with a thirty (30) minute meal break each day.

80. From on or about May 15, 2021 until in or about August 2021, Martinez worked forty-seven and a half (47.5) hours each week.

81. From in or about September 2021 until in or about January 2023, Martinez worked seven (7) days a week from 7:00 a.m. to 6:00 p.m. with a thirty (30) minute meal break each day.

82. From in or about September 2021 until in or about January 2023, Martinez worked seventy-three and a half (73.5) hours each week.

83. From in or about January 2023 until on or about June 14, 2023, Martinez worked six (6) days a week from 8:30 a.m. to 6:00 p.m. with a thirty (30) minute meal break each day.

84. From in or about January 2023 until on or about June 14, 2023, Martinez worked fifty-four (54) hours each week.

85. From in or about May 2021 until in or about April 2022, Defendants paid Martinez $13.00 an hour which is less than the $15.00 an hour New York statutory minimum wage rate.

86. From in or about April 2022 until on or about June 14, 2023, Defendants paid Martinez $15.00 an hour for twenty (20) hours of work by check and then $14.00 an hour in cash for the remaining hours worked, which is less than the $15.00 an hour New York statutory minimum wage rate.

87. During her employment, Defendants failed to pay Martinez the statutory minimum wage rate each week.

88. During her employment, Defendants paid Martinez straight-time for all hours worked.

89. Defendants did not pay Martinez overtime compensation for the overtime hours she worked each week.

90. Defendants did not pay Martinez an overtime premium for any of the hours she worked in excess of forty (40) per week at a rate of one-and-one-half times her regular rate of pay.

91. Defendants were aware of Martinez's work hours and pay rates but failed to pay her the proper wages to which she was entitled under the law.

92. Defendants' failure to pay proper wages in a timely manner was made without good faith, willfully, and with a reckless disregard for Martinez's rights.

93. Martinez has been damaged by such failures in an amount to be determined at trial, including without limitation unpaid wages, liquidated damages, statutory damages, interest, and attorneys' fees and costs.

**Plaintiff Leria Perez Zapata**

94. Zapata is an adult female currently residing in the State of New York.

95. Defendants employed Zapata as a laborer for their benefit and at their direction.

96. Defendants employed Zapata from in or about May 2016 until on or about March 20, 2020.

97. At all relevant times, Zapata was an employee of Defendants, as defined by the FLSA and the NYLL.

98. From in or about May 2016 until in or about August 2016, Zapata worked Monday through Friday from 8:00 a.m. to 6:00 p.m. with a thirty (30) minute meal break each day.

99. From in or about May 2016 until in or about August 2016, Zapata worked forty-seven and a half (47.5) hours each week.

100. From in or about September 2016 until on or about March 20, 2020, Zapata worked Monday through Friday from 8:00 a.m. to 8:00 p.m. with a thirty (30) minute meal break each day.

101. From in or about September 2016 until on or about March 20, 2020, Zapata worked fifty-seven and a half (57.5) hours each week.

102. From in or about May 2016 until in or about August 2016, Defendants paid Zapata $90.00 a day, regardless of the number of hours she worked each week.

103. From in or about September 2016 until on or about March 20, 2020, Defendants paid Zapata $11.00 an hour.

104. From December 31, 2017 until on or about March 20, 2020, Defendants paid Zapata less than the New York statutory minimum wage rate.

105. From in or about September 2016 until on or about March 20, 2020, Defendants paid Zapata straight-time for all hours worked.

106. Defendants did not pay Zapata overtime compensation for the overtime hours she worked each week.

107. Defendants did not pay Zapata an overtime premium for any of the hours she worked in excess of forty (40) per week at a rate of one-and-one-half times her regular rate of pay.

108. Defendants were aware of Zapata's work hours but failed to pay her the proper wages to which she was entitled under the law.

109. Defendants' failure to pay proper wages in a timely manner has been made without good faith, willfully, and with a reckless disregard for Zapata's rights.

110. Zapata has been damaged by such failures in an amount to be determined at trial, including without limitation unpaid wages, liquidated damages, statutory damages, interest, and attorneys' fees and costs.

**Plaintiff Mateo Guzman**

111. Guzman is an adult male currently residing in the State of New York.

112. Defendants employed Guzman as a laborer for their benefit and at their direction.

113. Defendants employed Guzman from in or about September 2016 until on or about March 20, 2020.

114. At all relevant times, Guzman was an employee of Defendants, as defined by the FLSA and the NYLL.

115. From in or about September 2016 until on or about March 20, 2020, Guzman worked Monday through Friday from 8:00 a.m. to 8:00 p.m. and Saturday from 8:00 a.m. to 5:00 p.m. with a thirty (30) minute meal break each day.

116. From in or about September 2016 until on or about March 20, 2020, Guzman worked sixty-six (66) hours each week.

117. From in or about September 2016 until on or about March 20, 2020, Defendants paid Guzman $600.00 a week, regardless of the number of hours he worked each week.

118. From December 31, 2016 until on or about March 20, 2020, Defendants paid Guzman less than the New York statutory minimum wage rate.

119. Defendants did not pay Guzman overtime compensation for the overtime hours he worked each week.

120. Defendants did not pay Guzman an overtime premium for any of the hours he worked in excess of forty (40) per week at a rate of one-and-one-half times his regular rate of pay.

121. Defendants were aware of Guzman's work hours but failed to pay him the proper wages to which he was entitled under the law.

122. Defendants' failure to pay proper wages in a timely manner has been made without good faith, willfully, and with a reckless disregard for Guzman's rights.

123. Guzman has been damaged by such failures in an amount to be determined at trial, including without limitation unpaid wages, liquidated damages, statutory damages, interest, and attorneys' fees and costs.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## 29 U.S.C. § 201 *ET SEQ.*
## FAILURE TO COMPENSATE FOR OVERTIME
## (On Behalf of Martinez Only)

124. Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

125. The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or are employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).

126. Defendants were and are subject to the overtime pay requirements of the FLSA because Atlantis Super Wash and Clean City are an enterprise engaged in commerce or in the production of goods for commerce.

127. At all times relevant to this Complaint, Atlantis Super Wash and Clean City had, and continue to have, two (2) or more employees handle goods or materials that have moved in interstate commerce, including Martinez, who handled materials and equipment that originated outside of the State of New York.

128. Upon information and belief, the gross annual volume of sales made or business done by Atlantis Super Wash and Clean City, individually or jointly, for the years 2021 and 2022 was not less than $500,000.00.

129. At all times relevant to this action, Martinez was entitled to the rights, benefits, and protections granted by the FLSA, 29 U.S.C. § 207, *et seq*.

130. Section 207(a)(1) of the FLSA states that an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week.

131. By the above-alleged conduct, Defendants have violated the FLSA by failing to pay Martinez overtime compensation as required by the FLSA.

132. Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from the overtime compensation requirements set forth in Section 207(a)(1) of the FLSA.

133. However, none of the Section 13 exemptions apply to Martinez because she did not meet the requirements for coverage under the exemptions during the relevant periods of their employment.

134. Defendants acted willfully and either knew that their conduct violated the FLSA or showed a reckless disregard for the matter of whether their conduct violated the FLSA.

135. Defendants did not act in good faith with respect to the conduct alleged herein.

136. As a result of Defendants' violations of the FLSA, Martinez has incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation, pursuant to 29 U.S.C. § 216(b).

## COUNT II
## VIOLATION OF THE NEW YORK LABOR LAW
## ARTICLE 6 AND 19
## FAILURE TO COMPENSATE FOR OVERTIME

137. Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

138. At all times relevant to this Action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

139. Under New York law, an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week in the manner and methods provided by the FLSA. 12 N.Y.C.R.R. §§ 142-2.2.

140. By the above-alleged conduct, Defendants failed to pay Plaintiffs overtime compensation as required by the New York Labor Law and the Regulations pertaining thereto.

141. By the above-alleged conduct, Defendants failed to pay Plaintiffs overtime compensation for the time periods in which they worked in excess of forty (40) hours a week for Defendants.

142. Plaintiffs were not exempt from the overtime provisions of the New York Labor Law during the relevant periods of their employment, because they did not meet the requirements for any of the reduced number of exemptions available under New York law.

143. Defendants acted willfully and either knew that their conduct violated the New York Labor Law or showed a reckless disregard for the matter of whether their conduct violated the New York Labor Law.

144. Defendants did not act in good faith with respect to the conduct alleged herein.

145. As a result of Defendants' violations of the NYLL, Plaintiffs incurred harm and loss in an amount to be determined at trial, in addition to liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest.

## COUNT III
## VIOLATION OF THE NEW YORK LABOR LAW
## ARTICLE 19
## FAILURE TO PAY MINIMUM WAGES

146. Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

147. By the conduct alleged herein, Defendants have willfully failed to pay Plaintiffs at the applicable minimum hourly wage, in violation of the New York Minimum Wage Act, specifically NYLL § 652.

148. Such failures have constituted outrageous conduct, made knowingly and willfully, or with a reckless indifference to Plaintiffs' rights.

149. Defendants have acted willfully and either knew that their conduct violated the New York Labor Law or have shown a reckless disregard for the matter of whether their conduct violated the New York Labor Law.

150. Defendants have not acted in good faith with respect to the conduct alleged herein.

151. As a result of Defendants' unlawful practices, Plaintiffs have suffered a loss of wages.

152. As a result of Defendants' violations of the NYLL, Plaintiffs have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, interest, and attorneys' fees and costs of litigation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, by and through their attorneys, The NHG Law Group, P.C., demand judgment against Defendants and in favor of Plaintiffs for a sum that will properly, adequately, and completely compensate Plaintiffs for the nature, extent, and duration of the damages, costs of this action, and as follows:

A. Declare and find that Defendants committed one or more of the following acts:

1. Willfully violated provisions of the FLSA by failing to pay Martinez overtime compensation;

2. Willfully violated the provisions of the NYLL by failing to pay Plaintiffs overtime compensation and minimum wages;

B. Award compensatory damages, including all wages owed, in an amount according to proof;

C. Award liquidated damages under the NYLL, or alternatively the FLSA;

D. Award interest on all unpaid wages owed accruing from the date such amounts became due;

E. Award all costs and attorneys' fees incurred in prosecuting this action;

F. Award an automatic fifteen percent (15%) increase with respect to any damages not paid within the later of ninety (90) days following the issuance of judgment or the expiration of the time to appeal pursuant to the NYLL; and,

G. Provide such further relief as the Court deems just and equitable.

Dated: Massapequa, New York  
October 16, 2023

The NHG Law Group, P.C.

By: Keith E. Williams, Esq.  
*Attorneys for the Plaintiffs*  
4242 Merrick Road  
Massapequa, New York 11758  
Tel: 516.228.5100  
keith@nhglaw.com