**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ESTER   MARTINEZ,   LERIA   PEREZ                      **23-cv-04667 (CBA)(PK)**
ZAPATA, and MATEO GUZMAN,

        Plaintiffs,

-against-

ATLANTIS SUPER WASH CENTER INC.,
CLEAN     CITY     LAUNDRY     INC.,
MICHAEL DINARDI, and NICK MIRA,

        Defendants.
-----------------------------------------------------------X

<u>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT**</u>

Respectfully submitted,

THE NHG LAW GROUP, P.C.
*Attorneys for the Plaintiffs*
4242 Merrick Road
Massapequa, New York 11758

Counsel:  Keith E. Williams, Esq.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................ii

I.      INTRODUCTION ........................................................................................1

II.     STATEMENT OF RELEVANT FACTS ...................................................2

       A.    Plaintiff Ester Martinez ...................................................................2

       B.    Defendant Nick Mira ......................................................................3

III.    LEGAL ARGUMENT ................................................................................4

       A.    Standard for Motion to Dismiss for Failure to State a Claim Upon
            Which Relief May Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6) ...................4

       B.    Martinez has Pleaded Sufficient Factual Allegations to Support Her
            FLSA Overtime Claim .....................................................................5

       C.    Plaintiffs have Pleaded Sufficient Factual Allegations to Support
            their Claim that Mira is Individually Liable for Defendants' Wage
            Violations .......................................................................................14

       D.    While Plaintiffs Submit that the Amended Complaint is Properly
            Pleaded in All Respects, if this Court should Determine Otherwise,
            Plaintiffs respectfully Request the Opportunity to File a Second
            Amended Complaint .......................................................................18

       E.    Because Martinez's FLSA Claim for Overtime Should Not Be
            Dismissed for Failure to State a Claim, Plaintiffs' NYLL Claims
            Should Not Be Dismissed for Lack of Subject Matter Jurisdiction ..................21

IV.    CONCLUSION ..........................................................................................21

# TABLE OF AUTHORITIES

## **Cases**

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ........................................ 6

*Ansoralli v. CVS Pharmacy, Inc.*, 16-cv-01506 (CBA), 2017 WL 8790986
(E.D.N.Y. Sept. 29, 2017) ............................................................................. 11

*Apolinar v. R.J. 49 REST., LLC*, 2016 WL 2903278 (S.D.N.Y. May 18,
2016) ............................................................................................................. 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 4

*Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineracao S.A.*, 849
F. App'x 289 (2d Cir. 2021) .................................................................... 19, 20

*Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir.
2008) ............................................................................................................. 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................. 4, 5

*Bozdogan v. 23 Ludlam Fuel, Inc.*, 2022 WL 4273851 (E.D.N.Y. Sept. 15,
2022) .......................................................................................................... 5, 14

*Clay v. Martin*, 509 F.2d 109 (2d Cir. 1975) ............................................................ 19

*Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85 (2d Cir. 2013) ............................ 9, 14

*Donovan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983) .................................................. 14

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83
(2d Cir. 2002) ............................................................................................... 19

*Foman v. Davis*, 371 U.S. 178 (1962) ....................................................................... 19

*Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441 (E.D.N.Y.2009) ............... 5

*Jemine v. Dennis*, 901 F. Supp. 2d 365, 376 (2d Cir. 2012) ...................................... 6

*Kalloo v. Unlimited Mech. Co. of NY, Inc.*, 977 F. Supp. 2d 187 (E.D.N.Y.
2013) ............................................................................................................. 14

*Keiler v. Harlequin Enters.*, 751 F.3d 64 (2d Cir. 2014) ........................................... 4

*Khurana v. JMP USA, Inc*., 2017 WL 1251102 (E.D.N.Y. Apr. 5, 2017) ................. 14

*Leon v. Port Washington Union Free Sch. Dist.*, 49 F. Supp. 3d 353
(E.D.N.Y. 2014) ........................................................................................... 11

*Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013) ................................................................................................ 4, 5, 14

*M.E.S., Inc. v. Safeco Ins. Co. of Am.*, 2014 WL 2931398 (E.D.N.Y. June 27, 2014) ....................................................................................................... 18

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013) ................................................................................................... 14

*Padilla v. Manlapaz*, 643 F. Supp. 2d 302 (E.D.N.Y. 2009) ................................... 14

*Paganas v. Total Maint. Sol., LLC*, 220 F. Supp. 3d 247 (E.D.N.Y. 2016), vacated on other grounds, 726 F. App'x 851 (2d Cir. 2018) ........................... 10

*Paleja v. KP NY Operations LLC*, 2022 WL 364007 (2d Cir. Feb. 8, 2022) ............ 12

*Perry v. City of New York*, 2013 WL 6641893 (S.D.N.Y. Dec. 17, 2013) ................. 11

*Pitman v. Immunovant, Inc.*, 2023 WL 1995018 (E.D.N.Y. Feb. 14, 2023) .............. 20

*Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119 (2d Cir.1991) .................................. 19

*Rice v. City of New York*, 275 F. Supp. 3d 395 (E.D.N.Y. 2017) ............................. 16

*Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381 (E.D.N.Y. 2007) ................. 6

*S.S. Silberblatt, Inc. v. E. Harlem Pilot Block--Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28 (2d Cir. 1979) ............................................................................. 19

*Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir. 1988) ................................................. 16

*Shibetti v. Z Rest., Diner & Lounge, Inc.*, 2019 WL 11624313 (E.D.N.Y. Aug. 30, 2019) .............................................................................................. 11

*Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380 (E.D.N.Y. 2013) ............................. 5

*Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009) ...................................... 16

*Walz v. 44 & X Inc.*, 2012 U.S. Dist. LEXIS 161382 (S.D.N.Y. Nov. 7, 2012) ......................................................................................................... 5

*Williams v. Citigroup, Inc.*, 659 F.3d 208 (2d Cir. 2011) ....................................... 18

*Williams v. City of New York*, 2005 WL 2862007 (S.D.N.Y. Nov. 1, 2005) ............ 4

*Wolman v. Cath. Health Sys. of Long Island, Inc.*, 853 F. Supp. 2d 290 (E.D.N.Y. 2012), aff'd in part, rev'd in part sub nom. Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) ........................ 17

iii

**<u>Statutes</u>**

29 U.S.C. § 207 ...................................................................................................................5

29 U.S.C. § 207(a)(1) .........................................................................................................5

29 U.S.C. § 211(c) ..............................................................................................................5

**<u>Rules</u>**

Fed. R. Civ. P. 15(a)(2) .....................................................................................................18

Fed. R. Civ. P. 8(a)(2) .......................................................................................................16

Fed. R. Civ. P. 8(d)(1) .......................................................................................................16

**<u>Regulations</u>**

12 N.Y.C.R.R. § 142-2.1 ....................................................................................................8

12 N.Y.C.R.R. § 142-2.6 ....................................................................................................6

29 C.F.R. § 778.107 .......................................................................................................8, 13

29 C.F.R. § 778.109 ..........................................................................................................12

29 C.F.R. § 778.110 .......................................................................................................5, 13

29 C.F.R. § 778.112 ............................................................................................................5

## I.        INTRODUCTION

Plaintiffs, ESTER MARTINEZ ("Martinez"), LERIA PEREZ ZAPATA ("Zapata"), and MATEO GUZMAN ("Guzman") (collectively, "Plaintiffs"), by and through their undersigned counsel, THE NHG LAW GROUP, P.C., hereby submit this Memorandum of Law in Opposition to the Motion to Dismiss the Amended Complaint of Defendants, ATLANTIS SUPER WASH CENTER INC. ("Atlantis"), CLEAN CITY LAUNDRY INC. ("Clean City"), and NICK MIRA ("Mira") (collectively, "Defendants").

Nearly eighty (80) years ago, the U.S. Supreme Court admonished employers for complaining that the damages alleged by employees for wage violations lacked "the exactness and precision of measurement that would be possible had [the employer] kept records in accordance with the requirements of" the Fair Labor Standards Act ("FLSA"). *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). And yet, here we are listening to another employer complain that its former employees have not pleaded with particularity sufficient facts to plausibly allege an overtime claim, when Defendants themselves failed to keep and maintain time records for the hours that Plaintiffs worked each day and each week. Defendants complain that Martinez, specifically, merely alleged her "regular," "general," or "typical" work schedule, a range of non-specific pay rates, and that, as a result, she failed to identifiy a single week that she worked overtime and that her damages are incapable of calculation. They repeat these catch-phrases throughout their motion and feign ignorance of basic mathematical computation. But the main problem with Defendants' argument is that none of those contentions are even remotely accurate. They adopt these catch-phrases from other cases, ignoring that they do not exist in the instant Amended Complaint. In fact, there is not one instance in the Amended Complaint where Martinez describes her work hours as being "regular," "general," or "typical." Nor does she merely allege a range of non-specific hours or pay rates. In fact, Defendants' argument only holds water if you

1

literally change the wording in Plaintiffs' Amended Complaint to read how they want it to read. But no amount of misstatement or invention will change the fact that Martinez alleged specific periods of employment during which there were wage violations, specific times that she began and ended her shifts, and specific pay rates that she was paid. And regardless of how many times Defendants characterize actual facts as being nothing more than conclusions, a plain reading of Plaintiffs' Amended Complaint makes clear that the facts pleaded therein directly lead to the conclusion that Defendants willfully violated the federal and state wage and hour laws and that Mira is personally responsible for them.

For all the reasons discussed herein, Plaintiffs respecfully request that the Court deny Defendants' Motion to Dismiss the Amended Complaint in its entirety.

## II.   STATEMENT OF RELEVANT FACTS[1]

### A.   Plaintiff Ester Martinez

Defendants employed Martinez from on or about May 15, 2021 until on or about June 14, 2023.[2] From on or about May 15, 2021 until in or about August 2021, Martinez worked Monday through Friday from 7:00 a.m. to 5:00 p.m. with a thirty (30) minute meal break each day, for a total of forty-seven and a half (47.5) hours each week.[3] From in or about September 2021 until in or about January 2023, Martinez worked seven (7) days a week from 7:00 a.m. to 6:00 p.m. with a thirty (30) minute meal break each day, for a total of seventy-three and a half (73.5) hours each week.[4] From in or about January 2023 until on or about June 14, 2023, Martinez worked six (6)

---

[1] Defendants' Motion to Dismiss focuses solely on Martinez's FLSA claim for unpaid overtime and Plaintiffs' allegations that Mira is an employer as defined by FLSA. Accordingly, the relevant facts discussed herein will be limited to Martinez's FLSA allegations and Mira's control over the employment relationship with Plaintiffs.

[2] *See* Amended Complaint, Docket Entry ("D.E.") 11, at ¶ 77.

[3] *See* Amended Complaint, D.E. 11, at ¶¶ 79-80.

[4] *See* Amended Complaint, D.E. 11, at ¶¶ 81-82.

days a week from 8:30 a.m. to 6:00 p.m. with a thirty (30) minute meal break each day, for a total of fifty-four (54) hours each week.[5]

From in or about May 2021 until in or about April 2022, Defendants paid Martinez $13.00 an hour.[6] From in or about April 2022 until on or about June 14, 2023, Defendants paid Martinez $15.00 an hour for twenty (20) hours of work by check and then $14.00 an hour in cash for the remaining hours worked.[7] Defendants paid Martinez straight-time for all hours.[8] Defendants did not pay Martinez overtime compensation for the overtime hours she worked each week.[9]

### B.    Defendant Nick Mira

Mira is the Chief Executive Officer of Clean City.[10] Mira is an owner, officer, director, shareholder, and/or managing agent of both Clean City and Atlantis.[11] Mira participates in running the daily operations of both Clean City and Atlantis.[12] Mira participated in the management and supervision of Plaintiffs and their work for Atlantis and Clean City.[13] Specifically, Mira participated in (i) the decision to hire and fire Plaintiffs; (ii) deciding the job duties that Plaintiffs performed; (iii) directing Plaintiffs' job duties and responsibilities, (iv) the supervision of Plaintiffs' job duties and responsibilities; (v) deciding the manner in which Plaintiffs were paid; (vi) deciding the compensation Plaintiffs were paid; and, (vii) ensuring Plaintiffs were paid properly.[14]

---

[5] *See* Amended Complaint, D.E. 11, at ¶¶ 83-84.
[6] *See* Amended Complaint, D.E. 11, at ¶ 85.
[7] *See* Amended Complaint, D.E. 11, at ¶ 86.
[8] *See* Amended Complaint, D.E. 11, at ¶ 88.
[9] *See* Amended Complaint, D.E. 11, at ¶¶ 89-90.
[10] *See* Amended Complaint, D.E. 11, at ¶ 45.
[11] *See* Amended Complaint, D.E. 11, at ¶¶ 47-48.
[12] *See* Amended Complaint, D.E. 11, at ¶¶ 49-50.
[13] *See* Amended Complaint, D.E. 11, at ¶ 51.
[14] *See* Amended Complaint, D.E. 11, at ¶¶ 56-63.

## III.    LEGAL ARGUMENT

### A.    Standard for Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6)

In reviewing a motion to dismiss under Federal Rule 12(b)(6), the Court must accept as true all allegations in the complaint and draw all reasonable inferences in the non-moving party's favor. *See Keiler v. Harlequin Enters.*, 751 F.3d 64, 68 (2d Cir. 2014); *see also Williams v. City of New York*, 2005 WL 2862007, at *4-5 (S.D.N.Y. Nov. 1, 2005) ("In considering a motion to dismiss pursuant to [Rule 12(b)(6)] the Court should construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor[]") (internal citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As a result, legal conclusions "must be supported by factual allegations." *Id.* at 679. Accordingly, to survive a motion to dismiss under Federal Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Under Federal Rule of Civil Procedure 8(a)(2), a 'plausible' claim contains 'factual content that allows the court to draw the reasonable inference that the [party] is liable for the misconduct alleged.'" *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "[A pleader's] obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Id.* at 557. Thus, where a party's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible," the complaint must not be dismissed. *Id.* at 570; *Iqbal*, 556 U.S. at 680.

This standard is met when the party pleads "enough facts to state a claim to relief that is plausible on its face." *Walz v. 44 & X Inc.*, 2012 U.S. Dist. LEXIS 161382, at \*11 (S.D.N.Y. Nov. 7, 2012) (quoting *Twombly*, 550 U.S. at 570); *see also Lundy*, 711 F.3d at 115. Here, Defendants are advocating for a heightened pleading standard that requires particularity, rather than plausibility, in an attempt to circumvent the reduced burden afforded by *Mt. Clemens* when employers fail to keep and maintain time records for their employees. The Court should reject Defendants' position.

## B.   Martinez has Pleaded Sufficient Factual Allegations to Support Her FLSA Overtime Claim

To succeed on a FLSA overtime claim, a plaintiff must establish the following elements: (1) the employer was an enterprise engaged in commerce or in the production of goods for commerce; (2) the plaintiff is an "employee" within the meaning of the FLSA; and (3) that the plaintiff worked in excess of forty (40) hours in a given workweek and did not receive overtime compensation for such work. *See* 29 U.S.C. § 207(a)(1); *see also*, *Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 394 (E.D.N.Y. 2013) (citing *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 447 (E.D.N.Y.2009)). The only relevant issue here is whether Plaintiffs have sufficiently pleaded that Martinez worked in excess of forty (40) hours without receiving overtime pay.

The FLSA requires employers to provide employees with an overtime premium for all hours worked in excess of forty (40) hours per week. 29 U.S.C. § 207. Specifically, an employer is required to pay the employee one and one-half times his regular rate of pay when an employee's workweek exceeds forty (40) hours. *See Bozdogan v. 23 Ludlam Fuel, Inc.*, 2022 WL 4273851, at \*8 (E.D.N.Y. Sept. 15, 2022) (citing 29 U.S.C. § 207(a)(1), 29 C.F.R. § 778.112). When an employee is paid an hourly rate, "the hourly rate is the 'regular rate.'" 29 C.F.R. § 778.110.

Both federal and New York law provide that employers are required to make, keep and preserve records of employee wages, hours, and employment conditions. *See* 29 U.S.C. § 211(c);

12 N.Y.C.R.R. § 142-2.6. When an employer has failed to maintain such adequate records,

> an employee has carried out his burden if he proves that he has in
> fact performed work for which he was improperly compensated and
> if he produces sufficient evidence to show the amount and extent of
> that work as a matter of just and reasonable inference. The burden
> then shifts to the employer to come forward with evidence of the
> precise amount of work performed or with evidence to negate the
> reasonableness of the inference to be drawn from the employee's
> evidence. If the employer fails to produce such evidence, the court
> may then award damages to the employee, even though the result be
> only approximate.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946). It is well-settled that where an employer has failed to rebut the plaintiff employee's recollection of hours worked, a plaintiff's estimation is presumed correct. *Mt. Clemens*, 328 U.S. at 688; *Jemine v. Dennis*, 901 F. Supp. 2d 365, 376 (2d Cir. 2012).

In *Rivera v. Ndola Pharmacy Corp.*, the court held that, "[a]s defendants' records are inadequate, plaintiff's estimates may constitute sufficient evidence, and 'the employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records.'" *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 398 (E.D.N.Y. 2007) (quoting *Mt. Clemens*, 328 U.S. at 688). The United States Supreme Court has made clear that an employee is not to be penalized "by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act." *Mt. Clemens*, 328 U.S. at 687.

In their Memo of Law, Defendants argue that Martinez's allegations pertaining to her hours worked and pay rates are insufficient to state a claim. They argue that Martinez has failed to allege a single workweek during which she worked over forty (40) hours and that there was

uncompensated overtime. They also contend that the hours Martinez alleged are conclusory. And finally, they argue that because Martinez failed to allege how much she was paid each week, it is impossible to determine her regular rate of pay. Each of Defendants' arguments is unavailing.

As discussed *supra*, Martinez alleges sufficient factual allegations that make her overtime claim plausible. For example, Martinez alleges that from on or about May 15, 2021 until in or about August 2021, she worked Monday through Friday from 7:00 a.m. to 5:00 p.m. with a thirty (30) minute meal break each day. She further alleges that during this time, Defendants paid her $13.00 an hour. She further alleges that Defendants only paid her straight-time and did not pay her overtime during any of these weeks. These are all facts, not conclusions, terms that Defendants have evidently confused. And despite Defendants' mathematical struggles, these are all the facts one needs to reach the conclusion that Martinez worked more than forty (40) hours during each week of this time period without receiving overtime compensation.

To be sure, Defendants can use a date calculator, or even simply count the number of pay periods on a calendar, to determine that there are fifteen (15) weeks between Sunday, May 17, 2021 through Saturday, August 27, 2021 (using a Sunday through Saturday pay period). Based on the hours Martinez alleges she worked each day, using simple addition and multiplication, Defendants can determine that, after accounting for breaks, she worked nine and a half (9.5) hours per day, five (5) days a week, for a total of forty-seven and a half (47.5) hours per week. That means Defendants were required to pay Martinez seven and a half (7.5) hours (47.5 – 40 = 7.5) of overtime compensation at time and a half. But as Martinez alleges, Defendants never paid her overtime compensation; rather, they only paid her straight-time. Thus, Defendants owe her the half-time rate for these seven and a half (7.5) overtime hours. *See* 29 C.F.R. § 778.110 ("For overtime hours of work the employee must be paid, in addition to the straight time hourly earnings,

a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week."). Further, because Defendants paid Martinez less than the statutory minimum wage rate (*i.e.*, $13.00 during this time period), the "regular rate" used to calculate Martinez's overtime rate is set by the federal regulations. *See* 29 C.F.R. § 778.107 ("The regular rate of pay at which the employee is employed may in no event be less than the statutory minimum."). Accordingly, Martinez's overtime rate of pay is calculated by multiplying the minimum wage rate ($15.00 in New York City, *see* 12 N.Y.C.R.R. § 142-2.1) by 0.5, for a rate of $7.50 per hour. Thus, for each week during this fifteen-week time period, Martinez is owed $7.50 x 7.5 hours = $56.25 per week, which is the conclusion one reaches when taking all of the aforementioned well-pleaded factual allegations as true. Contrary to Defendants' disingenuous argument that Martinez failed to allege a single week in which she was the victim of wage theft, Martinez actually pleads fifteen (15) weeks of violations for this time period alone using specific times that she worked and the specific hourly rate she was paid.

This same analysis can be done for each of the other time periods Martinez alleges she was underpaid. For example, during the time periods of September 2021 until January 2023 and from January 2023 until June 14, 2023, Martinez similarly alleges the specific days she worked, the times she started and ended her shifts, the total number of hours she worked each week, and the specific hourly rate she was paid. Again, using these well-pleaded facts, one can easily come to the conclusion that Martinez worked seventy-three and a half (73.5) hours each week from September 2021 until January 2023 and fifty-four (54) hours each week from January 2023 until June 14, 2023 without being paid overtime. Martinez is not required to plead a week-by-week breakdown for the entire two (2) years she was employed by Defendants. Instead, the manner in

which Martinez pleaded her hours accomplishes the same goal while condensing the allegations into two (2) streamlined paragraphs per time period.[15]

Defendants rely on four (4) Second Circuit cases that are each inapplicable to the case at bar: *Lundy v. Cath. Health Sys. of Long Island Inc.*, *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, *DeJesus v. HF Mgmt. Servs., LLC*, and *Paleja v. KP NY Operations LLC*. Each of these decisions addressed the pleading standard for an FLSA overtime claim. The *DeJesus* Court summarized the *Lundy* decision as follows:

> the *Lundy* plaintiffs had failed to allege that they worked uncompensated overtime because, although the employees went to some lengths to approximate the hours they typically worked, even setting out their typical breaks and shift lengths, **the hours alleged did not add up to a claim that over forty hours had been worked in any particular week**. The allegations in *Lundy* thus failed because of arithmetic: tallying the plausible factual allegations, we could not get beyond forty hours in any given week, and therefore to a plausible claim for overtime.

*Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88-89 (2d Cir. 2013). On the *Nakahata* decision, the *DeJesus* Court summarized:

> the [*Nakahata*] plaintiffs also had alleged uncompensated work during meal breaks, training sessions, and extra shift time as evidence of an overtime violation without demonstrating how these instances added up to forty or more hours in a given week. We therefore concluded that the allegations lacked the "specificity" required, because though they "raise[d] the possibility" of an overtime claim, "absent any allegation that Plaintiffs were scheduled to work forty hours in a given week," they did not state a plausible claim for relief.

*DeJesus*, 726 F.3d at 89. In *DeJesus*, the Second Circuit determined that an employee – DeJesus – offered even "less factual specificity than did the plaintiffs in *Lundy* or *Nakahata*. She did not estimate her hours in any or all weeks or provide any other factual context or content. Indeed, her complaint was devoid of any numbers to consider beyond those plucked from the statute." *Id.*

---

[15] *See* Amended Complaint, D.E. 11, at ¶¶ 79-80, 81-82, 83-84.

None of these cases are on point with the instant action. Here, Martinez has alleged, for each day and week that she worked throughout her employment with Defendants, the start and end times of her shifts,[16] the minutes she received for breaks,[17] the total number of hours she worked during each week,[18] the hourly rate of pay she earned,[19] and that Defendants only paid her straight time rather than time and a half for all of the hours she worked in excess of forty (40) each week.[20] None of the *Lundy*, *Nakahata*, or *DeJesus* plaintiffs alleged facts to support their contention that they worked more than forty (40) without being properly paid overtime compensation. Here, Martinez easily meets this standard.

District Courts in the Second Circuit have distinguished the *Lundy*, *Nakahata*, and *DeJesus* decisions in cases where the employee has alleged facts that show a pattern of uncompensated overtime or where they have alleged their regular work schedule that indicates hours in excess of forty (40) and a failure to pay overtime. For example, in *Paganas v. Total Maint. Sol., LLC*, the Eastern District of New York held that:

> To meet the pleading standard, it is sufficient for a plaintiff to allege a pattern of overtime work instead of providing the specific hours worked. Plaintiff's allegations that "she regularly worked forty hours per week, and provided sufficient estimates of how much additional time she worked each week—namely 1 ½ to 2 hours per week" was sufficient to "describe the pattern of her overtime, but uncompensated work. Thus, her claim is distinguishable from the 'threadbare' allegations dismissed by the Second Circuit in *Lundy*, *Nakahata* and *Dejesus*, and other district courts in the Circuit following *Dejesus*."

*Paganas v. Total Maint. Sol., LLC*, 220 F. Supp. 3d 247, 257 (E.D.N.Y. 2016), *vacated on other grounds*, 726 F. App'x 851 (2d Cir. 2018) (citing *Leon v. Port Washington Union Free Sch. Dist.*,

---

[16] *See* Amended Complaint, D.E. 11, at ¶¶ 79, 81, 83.
[17] *Id.*
[18] *See* Amended Complaint, D.E. 11, at ¶¶ 80, 82, 84.
[19] *See* Amended Complaint, D.E. 11, at ¶¶ 85-86.
[20] *See* Amended Complaint, D.E. 11, at ¶¶ 88-90.

49 F. Supp. 3d 353, 358 (E.D.N.Y. 2014)); *see also Ansoralli v. CVS Pharmacy, Inc.*, 16-cv-01506

(CBA), 2017 WL 8790986 (E.D.N.Y. Sept. 29, 2017); *Perry v. City of New York*, 2013 WL

6641893 (S.D.N.Y. Dec. 17, 2013). In *Shibetti v. Z Rest., Diner & Lounge, Inc.*, the Court held

that:

> [one employee] offered her work schedule (she worked nine-hour days, five times
> per week) and her hourly pay rate ($2.00). Further, she alleged that she was "never
> paid any wages whatsoever for any hours worked in excess of forty (40) hours in a
> work week." [The employee] pleaded an adequate unpaid overtime claim because
> she asserted that she regularly worked in excess of forty hours in a week and was
> not paid any wages for this work, let alone the mandated overtime pay. Likewise,
> [the second employee] pleaded adequate facts for her claim. Like [the first
> employee], she pleaded her regular work schedule, which included forty-two-hour
> weeks. [She] also alleges that she was never paid for any hours worked in excess
> of forty hours in a given workweek. So, unlike *Lundy*, here Plaintiffs have alleged
> both that they worked in excess of forty hours a week, and that they were not
> compensated for their overtime labor. This is sufficient to plead a plausible claim
> for relief.

*Shibetti v. Z Rest., Diner & Lounge, Inc.*, 2019 WL 11624313, at *7 (E.D.N.Y. Aug. 30, 2019).

Here, as discussed *supra*, Martinez provided even more factual allegations than the *Paganas*

plaintiff and similar factual allegations to the *Shibetti* plaintiffs, which courts in this district have

found sufficient because they are greater than the threadbare facts alleged in *Lundy*, *Nakahata* and

*DeJesus*.

The final case on which Defendants rely is *Paleja v. KP NY Operations LLC*. Given that

defense counsel was the attorney of record for the *Paleja* appeal, one may expect Defendants to

provide an accurate description of the reasoning for this Second Circuit decision. Unfortunately,

Defendants misstate the basis for the *Paleja* Court's rationale. In their Memo of Law, Defendants

argue that *Paleja* is controlling because the Second Circuit held that allegations "that a plaintiff

'regularly worked in excess of 40 hours per week' and that in a 'typical week' the plaintiff would

work 'approximately 70 [sic] hours,' was insufficient to state an FLSA claim." Memo of Law at 6.

However, in affirming the lower court's decision to dismiss an employee's FLSA overtime claim for failure to state a claim, the *Paleja* Court actually determined that the employee "may well have sufficiently pleaded that he worked more than 40 hours a week[.]" *Paleja v. KP NY Operations LLC*, 2022 WL 364007, at *2 (2d Cir. Feb. 8, 2022). The *Paleja* Court determined that it was not the manner in which the employee pleaded his hours, but the insufficient allegations pertaining to his regular rate of pay that led the Court to determine the employee failed to state a claim. Specifically, the *Paleja* Court held that:

> properly stating an overtime claim under the FLSA additionally requires a plaintiff to allege that he was uncompensated for time worked in excess of the 40 hours. The sole non-conclusory allegation concerning his compensation — that in one week in September 2019, he was paid some $1,400 for working approximately 70 hours — is not sufficient to meet that burden. Without, for example, alleging the regular rate at which Paleja was employed, Paleja failed to provide the District Court with allegations sufficient to allow for the reasonable inference that the $1,400 payment failed to include overtime compensation. While the facts alleged certainly leave open the possibility that Paleja was insufficiently compensated for overtime, the mere possibility of misconduct is not enough to make out a plausible claim.

*Paleja*, 2022 WL 364007, at *2 (internal quotes, brackets, and citations omitted).

Defendants seemingly attempt to connect this rationale to the instant case later in their Memo of Law (while at the same time misstating the basis for the *Paleja* Court's decision earlier). They argue that "because an employee's average hourly wage is calculated 'by dividing his total renumeration for employment … in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid[,]" and "because a plaintiff needs to allege *some uncompensated time* in excess of forty (40) hours, it is not enough to merely allege that a plaintiff generally received an hourly wage without alleging how much that plaintiff earned in a single week compared to how many hours that plaintiff worked." Memo of Law at 7 (citing 29 C.F.R. § 778.109). In making this argument, Defendants misstate (a recurring theme) the federal regulation that is applicable to the instant case. Martinez was an hourly rate employee. As such,

29 C.F.R. Section 778.110 applies, not 29 C.F.R. Section 778.109, as Defendants misrepresent. Pursuant to 29 C.F.R. Section 778.110, "If the employee is employed **solely on the basis of a single hourly rate, the hourly rate is the 'regular rate.'** For overtime hours of work the employee must be paid, in addition to the straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week." 29 C.F.R. § 778.110 (emphasis added). Thus, as stated above, Martinez's "regular rate" is set by the federal regulations as being her hourly rate (or the minimum wage rate if greater, *see* 29 C.F.R. § 778.107), not by dividing her total renumeration by the number of hours she worked in a particular week, as Defendants erroneously claim. The reason for this approach is evident: multiplication and division are inverse operations. So, when an employee's hourly rate is multiplied by the number of hours worked, the result is the total renumeration for the week, and when the total renumeration is divided by the number of hours worked, the result is the hourly rate. For example, during the week of May 16, 2021 through May 22, 2021, Martinez alleges that she worked forty-seven and a half (47.5) hours and was paid $13.00 an hour: 47.5 x $13.00 = $617.50, and conversely, $617.50 / 47.5 = $13.00.[21] When viewed through the lens of the proper regulation, Defendants' argument is completely nonsensical.

Defendants have taken great liberty in inventing phrases that do not exist in Plaintiffs' Amended Complaint, and have failed to cite applicable case law and proper regulations. When the actual language in Plaintiffs' Amended Complaint is reviewed, it becomes clear that their well-pleaded allegations are more than sufficient to withstand this frivolous motion practice. The *Lundy*, *Nakahata*, and *DeJesus* decisions, while otherwise inapplicable to the instant case, do provide one

---

[21] This example is for illustrative purposes only and does not take into account that the federal regulations mandate that the regular rate cannot be less than the statutory minimum wage rate, which was $15.00 in New York City during 2021.

guiding principle that should be applied here: "determining whether a plausible claim has been pled is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Lundy*, 711 F.3d at 114; *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013); *DeJesus*, 726 F.3d at 88. Plaintiffs submit that common sense dictates that Defendants' Motion to Dismiss be denied in its entirety.

**C.**    **Plaintiffs have Pleaded Sufficient Factual Allegations to Support their Claim that Mira is Individually Liable for Defendants' Wage Violations**

"A corporate officer with operational control of a corporation's covered enterprise is an employer, along with the corporation, jointly and severally liable" for unpaid wages under the FLSA. *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983). "An employer may include an individual owner who exercises a sufficient level of operational control in the company's employment of employees." *Id.* "In determining whether an individual is an employer, courts consider the same factors that apply to corporations, namely 'whether the individual: (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Khurana v. JMP USA, Inc.*, 2017 WL 1251102, at *9 (E.D.N.Y. Apr. 5, 2017) (citing *Kalloo v. Unlimited Mech. Co. of NY, Inc.,* 977 F. Supp. 2d 187, 201 (E.D.N.Y. 2013)). "Employer status does not require continuous monitoring or total control of an employee." *Bozdogan*, 2022 WL 4273851, at *7 (citing *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 315 (E.D.N.Y. 2009).

Here, Defendants argue that the factual allegations Plaintiffs assert in support of their claims against Mira are merely a boilerplate recitation of the factors required to meet the definition of "employer" under the economic realities test. Defendants are woefully incorrect.

14

As discussed above, Plaintiffs allege that Mira is the Chief Executive Officer of Clean City and is an owner, officer, director, shareholder, and/or managing agent of both Clean City and Atlantis.[22] They further allege that Mira participates in running the daily operations of both Clean City and Atlantis.[23] They have clearly alleged that Mira has the requisite control over the corporate defendants. But further, Plaintiffs specifically allege how Mira controlled their employment relationships with the corporate defendants. Mira participated in all aspects of determining the terms and conditions of their employment, from participating in the decision to hire and fire them, deciding the job duties that they performed, directing their job duties and responsibilities, supervising the performance of their job duties and responsibilities, deciding the manner in which they were paid, deciding the amount of compensation they were paid, and ensuring they were paid properly (which, of course, he failed to do).[24]

Defendants' chief complaint seems to be that Plaintiffs did not further elaborate on how Mira "actually asserted any of the … alleged conduct." Memo of Law at 9. As viewed by Defendants, "participating" in the control of the employer-employee relationship is somehow insufficient to properly state a claim. Taking this flawed logic to its conclusion, Defendants seem to be arguing that so long as more than one (1) individual "participates" in making decisions pertaining to an employee's terms and conditions of employment, then none of those individuals can be held to be an "employer" because "participation" would not be enough. This reasoning strains the definition of "employer" to unenforceability and conflicts with the recognized theory of joint employment for purposes of determining FLSA responsibilities. *See Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 138 (2d Cir. 2008).

---

[22] *See* Amended Complaint, D.E. 11, at ¶¶ 45, 47-48.
[23] *See* Amended Complaint, D.E. 11, at ¶¶ 49-50.
[24] *See* Amended Complaint, D.E. 11, at ¶¶ 56-63.

To satisfy the pleading standard, Plaintiffs must plead "a short and plain statement of the claim showing that the pleader is entitled to relief" supported by allegations that are "simple, concise, and direct[,]" as they have done here, and then engage in discovery to collect admissible evidence to further support their claims that Mira personally violated the federal and state wage and hour laws by depriving Plaintiffs of their hard-earned money. *See* Fed. R. Civ. P. 8(a)(2), 8(d)(1). The purpose of Rule 8 is to "give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Rice v. City of New York*, 275 F. Supp. 3d 395, 407 (E.D.N.Y. 2017) (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Plaintiffs have adequately done that here. Mira is on notice that Plaintiffs are seeking to hold him personally liable for his role as an employer. And they have put Mira on notice that he meets the definition of "employer" by alleging specific facts relating to the conduct in which he personally engaged. When the facts pertaining to Mira's control over Plaintiffs' employment are accepted as true, they unmistakenly state a claim for relief that is plausible on its face.

Defendants rely on several inapposite cases to support their argument. The first, *Tracy v. NVR, Inc.*, involved "an enormous, multi-billion dollar corporation scattered across hundreds of miles[,]" which is a far-cry from the instant Defendants' single-location laundromat. *Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009). In *Tracy*, an employee alleged that a director of human resources met the definition of an "employer" under the economic realties test and named him as a party defendant. The *Tracy* Court found that the employee's allegations, which were solely alleged on information and belief, were limited to the HR director's general authority to hire and fire employees and that he maintained employment records. *Id.* at 247. The allegations only established that the HR director's "supposed policy-setting powers … in some way 'supported,' or indirectly impacted, those aspects of [Plaintiff's] employment." *Id.* Here, in contrast, Plaintiffs

16

have alleged specific conduct that demonstrates Mira directly controlled several aspects of the terms and conditions of their employment, including his participation in hiring and firing Plaintiffs, his participation in determining Plaintiffs' wages and schedule, and his participation in assigning and supervising Plaintiffs' job duties. Plaintiffs did not allege that Mira had general, non-specific authority over the employees at large; rather, they specifically identified Mira's position of power within the company and Mira's exercise of that power as it relates specifically to Plaintiffs themselves.

The second case Defendants cite is *Wolman v. Cath. Health Sys. of Long Island, Inc.* In *Wolman*, a group of employees who had brought suit against several joint employers alleged that a President/CEO of one of the companies was individually responsible for various wage violations because he met the definition of an "employer." *Wolman v. Cath. Health Sys. of Long Island, Inc.*, 853 F. Supp. 2d 290, 299 (E.D.N.Y. 2012), *aff'd in part, rev'd in part sub nom. Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013). The *Wolman* Court determined that the employees' relationship with the President was "too attenuated" because there were no allegations that he had the authority to control the employees in question. *Id.* The *Wolman* Court emphasized that the allegations failed to establish that the President had direct contact with the employees or that the President exercised operational control over any entity that remained in the case (the entity for whom he was President had already been dismissed from the action). *Id.* at 299-300. Here, Plaintiffs have alleged specific facts that, when taken as true, lead to the plausible conclusion that Mira meets the definition of "employer" under the FLSA. They alleged that Mira runs the day-to-day operations of the corporate defendants and that he directly participated in the control over Plaintiffs' terms and conditions of employment. These facts related to Mira's control

17

over Plaintiffs' employment relationship are not "too attenuated" to allow Mira to escape liability for his willful decisions to violate the wage and hours laws on behalf of his companies.

The third case on which Defendants rely is *Apolinar v. R.J. 49 REST., LLC*. There, two (2) employees sued a family-owned chain of delis for various wage violations and included the bosses' mother as an individual defendant. *Apolinar v. R.J. 49 REST., LLC*, 2016 WL 2903278 (S.D.N.Y. May 18, 2016). Importantly, the employees did not allege any facts demonstrating that the boss' mother had any direct control over the employees themselves. *Id.* at *5. Perhaps, if the instant Plaintiffs were suing Mira's mother, Defendants' argument may hold water. But Plaintiffs are not suing the boss' mother, they are suing their boss, Mira. And, as discussed *supra*, Plaintiffs have alleged specific facts that demonstrate Mira himself exercised direct control over the terms and conditions of Plaintiffs' employment.

For all the aforementioned reasons, Plaintiffs respectfully submit that they have pleaded sufficient factual allegations that, when taken as true, establish that Mira meets the definition of "employer" under the FLSA. Accordingly, Defendants' motion to dismiss Plaintiffs' claims against Mira should be denied in its entirety.

### D.   While Plaintiffs Submit that the Amended Complaint is Properly Pleaded in All Respects, if this Court should Determine Otherwise, Plaintiffs respectfully Request the Opportunity to File a Second Amended Complaint

Pursuant to Federal Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). The court should freely give leave when justice so requires." *Id.* "This permissive standard is consistent with [the court's] strong preference for resolving disputes on the merits." *M.E.S., Inc. v. Safeco Ins. Co. of Am.*, 2014 WL 2931398, at *2 (E.D.N.Y. June 27, 2014) (citing *Williams v. Citigroup, Inc.*, 659 F.3d 208, 212– 213 (2d Cir. 2011)). Justice so requires the amendment of a complaint "if the plaintiff has at least colorable grounds for relief" and is not "guilty of undue delay or bad faith or unless permission to

amend would unduly prejudice the opposing party." *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block--Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Clay v. Martin*, 509 F.2d 109, 113 (2d Cir. 1975)). Additionally, an amendment to a complaint must not be futile. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87–88 (2d Cir. 2002) (citing *Foman*, 371 U.S. at 182). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty*, 282 F.3d at 87–88 (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991)).

Defendants argue that Plaintiffs should be denied a second opportunity to amend their pleadings because any such amendment will be futile and will prejudice them. Of course, for the obvious reason that no such prejudice will occur this early in the action, Defendants fail to articulate a single explanation as to how they will be prejudiced by a second amended complaint when discovery in this case has yet to even commence. They further fail to articulate how an amended complaint would be futile. While Defendants contend throughout their motion that Plaintiffs' allegations are nothing more than conclusory statements, it is quite ironic that they offer nothing but the conclusory statement that Plaintiffs receiving "yet another opportunity to amend is futile and will only cause undue prejudice to Defendants" without offering even a cursory explanation as to how.

Defendants rely on *Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineracao S.A.* to argue that Plaintiffs should not be afforded an opportunity to amend because they were put on notice of the deficiencies. *Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineracao S.A.*, 849 F. App'x 289, 295 (2d Cir. 2021) But the *Banco Safra* Court affirmed the lower court's decision denying the plaintiff's request to amend, in large part, because it "repeated[ly] fail[ed] to cure

deficiencies by amendments previously allowed." *Id.* Here, Plaintiffs have not "repeatedly" failed to cure deficiencies and the Court itself has not put Plaintiffs on notice that there are any deficiencies. *Banco Safra* is clearly inapplicable to instant matter.

Given Defendants' inability to explain how an amended complaint would be futile or prejudicial, their request to deny Plaintiffs a further amended complaint is nothing more than opportunistic gamesmanship. Defendants note in their opening brief, a request for leave to amend is not one a court is required to grant; but that does not mean the Court should deny the request. While Plaintiffs firmly believe they have pleaded sufficient factual information to support Martinez's FLSA claim and Plaintiffs' claims against Mira, if this Court determines otherwise, Martinez can provide a week-over-week recitation of her hours worked, her pay rates, and the underpayments for each specific week of her employment, and Plaintiffs can supplement their allegations to demonstrate the various conduct in which Mira engaged in the exercise of control over Plaintiffs, including how he hired and fired them, how he offered them their respective pay rates, how he told them to perform their job duties, to name a few examples. Again, such a heightened-pleading standard does not exist for FLSA and NYLL claims. Pleading with that level of particularity is reserved for claims applicable to Federal Rule 9(b). But if it must be done in this case, it can be. *See Pitman v. Immunovant, Inc.*, 2023 WL 1995018, at *5 (E.D.N.Y. Feb. 14, 2023) ("In determining whether to allow a plaintiff to amend the pleadings, the court may consider whether the plaintiff's counsel has informed the district court how the complaint's alleged defects would be cured.").

For these reasons, if the Court's decision on Defendants' Motion to Dismiss is adverse to Plaintiffs, they should, respectfully, be given an opportunity to file a Second Amended Complaint.

**E.     Because Martinez's FLSA Claim for Overtime Should Not Be Dismissed for Failure to State a Claim, Plaintiffs' NYLL Claims Should Not Be Dismissed for Lack of Subject Matter Jurisdiction**

Defendants' sole argument for the Court declining to exercise supplemental jurisdiction is grounded in the Court first dismissing Martinez's FLSA claim. They make no argument that the Court should dismiss Plaintiffs' state law claims in the absence of such a dismissal of the FLSA claim. Accordingly, should this Court deny Defendants' motion to dismiss the FLSA claim, there is no basis to dismiss Plaintiffs' state law claims.

On the other hand, if the Court dismisses Martinez's FLSA claim, Plaintiffs do not oppose the dismissal of their state law claims so that they can replead them in state court. Accordingly, Plaintiffs respectfully submit that if the Court dismisses Martinez's FLSA claim and Plaintiffs' state law claims, the Court should dismiss them without prejudice.

**IV.     CONCLUSION**

For all the reasons stated herein, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss their First Amended Complaint in its entirety.

Dated: Massapequa, New York         The NHG Law Group, P.C.
          February 12, 2024

By: Keith E. Williams, Esq.
*Attorneys for the Plaintiff*
4242 Merrick Road
Massapequa, New York 11758
Tel: 516.228.5100
keith@nhglaw.com

To:     Milman Labuda Law Group PLLC
          c/o Emanuel Kataev, Esq. and
          David Aminov, Esq.
          *Attorneys of Record for the Defendants*
          3000 Marcus Avenue, Suite 3W8
          Lake Success, NY 11042-1073
          Tel: 516.328.8899
          emanuel@mllaborlaw.com

daminov@mllaborlaw.com

cc:   Robert Milman, Esq.
rob@mmmlaborlaw.com